UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE CHALLENGE PRINTING COMPNAY, INC., <br><br>Plaintiff, <br><br>v. <br><br>ELECTRONICS FOR IMAGING INC., <br><br>Defendant. | Case No. 5:20-cv-04659-EJD <br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE** <br><br>Re: Dkt. No. 12 |

This case arises out of an agreement between Plaintiff, the Challenge Printing Company, Inc. ("Challenge Printing"), and Defendant, Electronics for Imaging, Inc. ("EFI"), for software to aid in Challenge Printing's printing enterprise. Challenge Printing asserts claims for breach of contract, intentional as well as negligent misrepresentation, fraud, and unfair competition.[1] Pending before the Court is EFI's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Motion to Dismiss ("Mot."), Dkt. No. 12. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** EFI's motion to dismiss.

---

[1] Challenge Printing's caption page also includes a cause of action for "Declaratory Relief," but Challenge Printing concedes that it "inadvertently referenced declaratory relief in the Complaint's caption and is not pursuing a claim for declaratory relief." Plaintiff's Opposition to Motion to Dismiss ("Opp.") 2, Dkt. No. 14.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
1

## I. BACKGROUND

### A. Factual Background

Challenge Printing is a New Jersey corporation with its principle place of business in Clifton, New Jersey. Complaint for Damages ("Compl.") ¶ 1, Dkt. No. 1. Challenge Printing is a pharmaceutical printing company that prints packaging components such as labels, inserts, and folding cartons for pharmaceutical manufacturers worldwide. *Id.* ¶ 7. In pursing this enterprise, Challenge Printing had a management information system for, among other things, estimating pricing and scheduling jobs. *Id.* ¶ 10, 12. In 2016, Challenge Printing's then-current system had significant drawbacks: its estimating ability "was not integrated and relied heavily on Excel and attaching to various other programs," (*id.* ¶ 13), its scheduling functionality "produced manual reports which were not dynamic, efficient, or integrated" such that Challenge Printing's "managers were spending significant portions of their work day managing the scheduling," (*id.* ¶ 14), and the system "required working with three separate systems to log print jobs onto spreadsheets," (*id.* ¶ 15). For this reason, in 2016, Challenge Printing approached EFI with "a desire to eliminate the need to build, advance and maintain its then-current management information system." *Id.* ¶ 10.

EFI is a Delaware corporation with its principle place of business in Fremont, California.[2] *Id.* ¶ 2. EFI develops technologies for the manufacturing of signage, packaging, textiles, ceramic tiles and personalized documents, as well as offering "digital front ends and a comprehensive business and production workflow suite" such as was sought by Challenge Printing. *Id.* ¶ 8. In 2016, after being approached by Challenge Printing about replacing its management information system, the parties exchanged emails and telephone communications regarding a proposed solution. *See id.* ¶¶ 16-41.

Challenge Printing alleges that between October and December of 2016, in this pre-contractual stage, EFI made several misrepresentations about its products. *See id.* For example, in

---

[2] Given the complete diversity of the parties and that the amount in controversy well exceeds $75,000 in this case, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
2

1  an email sent on October 13, 2016, Mr. Darren Bradley, Sales Development Manager for EFI,
2  represented that "[EFI could] provide a very efficient and Global view to [Challenge Printing's]
3  business and shop floor, helping [their] team optimize the manufacturing floor and become much
4  more efficient." *Id.* ¶ 17. As another example, in a phone call on December 12, 2016 between Mr.
5  Bradley and one of EFI's technical employees (identified only as "Sam") on the one hand, and
6  Challenge Printing's IT Director (Mr. Ashok Avadhani) and Regional Director (Mr. Chad Sasso)
7  on the other, EFI represented that its proposed solution would be able to be integrated into
8  Challenge Printing's then-current systems. *Id.* ¶ 38. EFI had proposed their "Enterprise Packaging
9  (Radius MIS based) Suite Certified Solution" (the "Radius Suite") as a solution to EFI's problems
10 in an executive brief sent by Mr. Bradley on or about November 11, 2016. *See id.* ¶¶ 21-22; *See*
11 Compl., Ex. 1 ("Executive Brief") 1, Dkt. No. 1-1. Challenge Printing decided to purchase only
12 part of the software suite, the iQuote estimating software. Compl. ¶¶ 41.

13 About a year later, on December 29, 2017, the parties entered into a written agreement for
14 the iQuote software along with the EFI's accompanying professional services for $175,000. *Id.* ¶
15 42. This agreement was memorialized in an investment summary, Compl., Ex. 3 ("Investment
16 Summary"), Dkt. No. 1-3, as well as a purchase order, Compl., Ex. 4 ("Purchase Order"), Dkt. No.
17 1-4, both of which were dated December 29, 2017. Compl. ¶ 42. The Investment Summary was
18 sent by EFI to Challenge Printing by email and was signed by Mr. Adam Sasso, the Senior
19 Marketing Director of Challenge Printing, and by Gabriel Matsliach, the Senior Vice President
20 and General Manager of EFI. *Id.* ¶ 43-44. The Investment Summary expressly incorporated EFI's
21 Terms and Conditions License and Purchase Agreement ("EFI's Terms and Conditions"). *Id.* ¶ 44;
22 Investment Summary at 2. The Purchase Order was sent by Challenge Printing to EFI on or about
23 the same day, and expressly incorporated Challenge Printing's Terms and Conditions of Sale
24 ("Challenge Printing's Terms and Conditions"), Compl. ¶ 43, but it was not signed by either party,
25 *see* Purchase Order.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
3

1  In February 2018, installation began at Challenge Printing's office. Compl. ¶ 50. Challenge Printing alleges that, contrary to EFI's Terms and Conditions, the iQuote product did not meet EFI's then current specifications, and that contrary to Challenge Printing's Terms and Conditions, the software was not fit for the purpose for which it was purchased. Compl. ¶¶ 52-53. Challenge Printing also alleges that the product did not perform in accordance with EFI's precontractual representations. *Id.* ¶¶ 51, 54. Challenge Printing communicated these defects and concerns to Ms. Stephanie Groth, a Senior Consultant for EFI, including through phone calls and at least one email, in May and June of 2019. *Id.* ¶¶ 60-61. On May 29, 2019, Chad Sasso, Adam Sasso, and Mr. Theodore Sasso, President of Challenge Printing, were contacted by Mr. Alfonso Hernandez Jr., a new regional lead for EFI, who stated that he was checking in on the identified problems and would get back to the Sassos. *Id.* ¶¶ 67-68. After June 7, 2019, Challenge Printing never received any follow-up from either Ms. Gross or Mr. Hernandez Jr. *Id.* ¶ 68, 70.

On March 12, 2020, Challenge Printing sent EFI a notice demand letter, terminating the agreement and seeking $226,000 in damages, consisting of $175,000 for the contract price, and $51,000 for incidental damages. *Id.* ¶¶ 72-73; Compl., Ex. 7 ("Demand Letter"), Dkt. No. 1-7. Challenge Printing alleges that, as of the filing of its complaint, the issues remain unresolved and the iQuote software remains not fully implemented. *Id.* ¶ 70.

### B. Procedural Background

On July 13, 2020, Challenge Printing filed its complaint for damages against EFI. Compl. On August 10, 2020, EFI filed a motion to dismiss all of Challenge Printing's causes of action. Mot. Challenge Printing filed its opposition on August 24, 2020. Opp. Finally, on August 31, 2020, EFI filed its reply. Reply in Support of Motion to Dismiss ("Reply") 11, Dkt. No. 15.

## II.   LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.* at 556–57. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

### B. Heightened Rule 9(b) Standard

Allegations sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."). This

Court also applies the Rule 9(b) standard to the claim for negligent misrepresentation.[3] To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citations omitted). In other words, the "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### III. DISCUSSION

EFI moves to dismiss each of Challenge Printing's claims. This Court addresses each claim in turn, but treats the fraud and misrepresentation claims together.

#### A. Breach of Contract Claim

Challenge Printing's first cause of action is for breach of what it refers to as the "December 29, 2017 Agreement." Compl. ¶ 76. This December 29, 2017 Agreement allegedly consists of both

---

[3] This Court has previously found that "[c]laims for negligent misrepresentation must meet the particularity requirement of Rule 9(b)." *Trombley Enterprises, LLC v. Sauer, Inc.*, 2019 WL 452044, at *3 (N.D. Cal. Feb. 5, 2019). However, "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation[.] [M]ost district courts in California hold that it does." *Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*, 2020 WL 5993225, at *5 (N.D. Cal. Oct. 9, 2020). As the court noted in *Najarian Holdings*, "opinions applying Rule 9(b) to negligent misrepresentation claims involved instances where the negligence claim was grounded in fraud. Conversely, where a claim is not based in fraud and involves simple negligence, then it would be in error to apply Rule 9(b)'s heightened pleading requirements." *Id.* at *6 (citing the analysis from *U.S. Capital Partners, LLC v. AHMSA International, Inc.*, 2013 WL 594285, at *3–4 (N.D. Cal. Feb. 14, 2013)).

As in *Najarian Holdings*, the negligent misrepresentation claim here sounds in fraud because the underlying conduct for the second, third, and fifth causes of action is exactly the same, involving the same allegedly false representations. *See id.* (finding that "[t]he underlying conduct for the two claims [was] the same."). It is also persuasive that the Ninth Circuit, in an unpublished decision, has recently affirmed a district court's dismissal of a negligent misrepresentation claim on Rule 9(b) grounds. *Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017) (but noting that, in that case, "the plaintiffs d[id] not contest, that Rule 9(b) applie[d] to the[ir] claim."). Here, as in *Puri v. Khalsa*, Challenge Printing does not contest that Rule 9(b) applies to the negligent misrepresentation claim and, given the underlying conduct, this Court so finds.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

the Investment Summary, which incorporates EFI's Terms and Conditions, and Challenge Printing's Purchase Order, which incorporates Challenge Printing's Terms and Conditions. *Id.* ¶¶ 42, 44-45. Challenge Printing alleges that EFI breached the December 29, 2017 Agreement by failing to:

> (i) provide software that was fit for the purpose for which it was purchased; (ii) provide software which performed materially in accordance with EFI's then-current applicable specifications; (iii) provide professional services in good and workmanlike manner consistent with generally accepted industry standards; (iv) repair or replace the defective product, re-perform the service that did not meet EFI's warranties, or provide a full refund of the purchase price; and (v) cure the material breach of the December 29, 2017 Agreement.

Compl. ¶ 76. Some of these alleged breaches reflect only Challenge Printing's Terms and Conditions, while others reflect EFI's Terms and Conditions. In particular, the requirements that the software be (i) "fit for the purpose for which it was purchased" and (v) that EFI "cure the material breach of the December 29, 2017 Agreement" are based solely on Challenge Printing's Terms and Conditions. *See* Compl. ¶¶ 46-48.

### 1. Alleged Breach of Challenge Printing's Terms and Conditions

EFI contends that it never agreed to Challenge Printing's Terms and Conditions, and therefore "to the extent that Challenge Printing is basing its breach of contract claim on the Challenge Printing Terms and Conditions, the claim should be dismissed." Mot. at 13. EFI's argument is based on the integration clause in its Terms and Conditions, which states that "[t]his Agreement constitutes the full and complete agreement between you and EFI with respect to the Product and supersedes all prior negotiations, understandings, and agreements between us related to the Product. Any waiver, modification, or amendment will be effective only if in writing signed by you and EFI." Compl., Ex. 5 ("EFI's Terms and Conditions") ¶ 15(e), Dkt. No. 1-5.

If EFI's Terms and Conditions were the only contract governing the parties' transaction, the integration clause might well preclude Challenge Printing from asserting a breach of contract claim based on other terms and conditions. Challenge Printing alleges, however, that its own

1 Terms and Conditions also form part of the December 29, 2017 Agreement. Compl. ¶¶ 42, 45.

2 Challenge Printing's Terms and Conditions also contain an integration clause, which states that

3 "[t]his document contains all terms of the parties [sic] agreement concerning the materials or

4 services described on the face of this document. It may not be added to, modified, or superseded

5 except by a written instrument signed by an authorized representative of The Challenge Printing

6 Company (Buyer)." Compl., Ex. 6 ("Challenge Printing's Terms and Conditions"), Dkt. No. 1-6.

7 Thus, the first question for this Court is how to treat the competing agreements under California

8 law, which the parties have not addressed in their briefs.[4]

### a. Whether the U.C.C. Applies

The Uniform Commercial Code (the "UCC") applies to transactions of goods. Cal. Com. Code § 2102. The UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . ." Cal. Com. Code § 2105. "Applying the UCC to software poses a complex issue because transactions for software often combine elements of both goods and services." *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1199 (N.D. Cal. 2014). As such, courts have arrived at different decisions concerning whether software transactions are covered by the UCC.

The primary test used by courts to determine whether software is a good under the UCC is the predominant factor test, where courts look to the "essence of the agreement" on a case-by-case basis to decide how to characterize the transaction. *Gross v. Symantec Corp.*, 2012 WL 3116158, at *8 (N. D. Cal. July 31, 2012) (citing *RRX Indus., Inc. v. Lab–Con, Inc.*, 772 F.2d 543, 546 (9th Cir.1985)). "Courts determine whether the predominant factor or purpose of the contract is

---

[4] EFI points out that "Challenge Printing['s] Terms and Conditions contain a New Jersey forum selection clause and choice of law provision [whereas] EFI's Terms and Conditions, contain a California choice of law and forum selection provision." Mot. at 12 n.1 (citing Challenge Printing's Terms and Conditions and EFI's Terms and Conditions ¶ 15(b)). This Court will apply California substantive law because Challenge Printing has brought this action in California and relies on the California Civil Code, and both parties base their arguments on California law (*see, e.g.,* Opp. at 2, 11-13). Neither party, however, addresses whether the UCC or California substantive contract law governs the agreement.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

8

rendition of services, with goods incidentally involved, or is rendition of goods, with labor incidentally involved." *Simulados Software*, 40 F. Supp. 3d at 1199.

Generally, courts have found that mass-produced, standardized, or generally available software, even with modifications and ancillary services included in the agreement, is a good that is covered by the UCC. *See, e.g., RRX Indus.*, 772 F.2d at 546 (finding that license for mass-produced software for use in medical laboratories was covered by the UCC, even when the software contract also provided for ancillary services such as training, repair, and system upgrading). Even software adapted for specific needs has been considered a good. *See, e.g., Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 676 (3d Cir. 1991) (finding that the software contracted for was a good even where one party planned to modify its existing software and hardware interfaces for the other party's use). "[T]he advantages of applying the UCC to software transactions (namely uniformity on a range of questions) and the importance of software to the commercial world [are] strong policy arguments favoring the application of the UCC[.] [T]he majority of academic commentary espouse[s] the view that software falls under the UCC." *Simulados Software*, 40 F. Supp. 3d at 1200 (citing the rationale of *Advent Sys.*, 925 F.2d at 675-76). On the other end of the spectrum, courts in this district and beyond have determined that "[w]here software is designed from scratch, or the transaction is mainly for one party's knowledge and skills in creating software, the software is often found to be a service rather than a good." *Id.* at 1201.

In this case, Challenge Printing alleges it had some special software needs, including that EFI's software would be integrated with its then-existing systems. Compl. ¶ 38. However, there is no indication that EFI's software was specially designed for Challenge Printing. The iQuote software appears to be standardized software offered to EFI customers. *See* Investment Summary at 1 (calling it the "Enterprise standalone bundle"). The iQuote software is ordinarily part of and installed with the Radius Suite—an EFI standardized software package that is routinely offered to EFI's customers. *See, e.g.*, Executive Brief at 1 (touting "Radius Installations: 350 Worldwide;

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

9

250 U[nited] S[tates] & C[anada]"). Further, the Investment Summary shows that of the $182,000 pre-discount price, $115,000 was for "Total Software and Hardware" while $67,500 was for "Total Professional Services." Investment Summary at 1. This price differential suggests that EFI's support services were ancillary to Challenge Printing's purchase of iQuote. Unlike in *Simulados Software*, Challenge Printing sought and purchased an estimating and planning software to replace its management information system, for which professional services were ancillary. Compl. ¶¶ 10-12. *Contra. Simulados*, 40 F. Supp. 3d at 1202 (explaining that "Simulados was not purchasing any software from [Defendant]. Rather, [Defendant] was only providing services to modify Simulados' already-existing software."). Applying the predominant factor test to this case, the Court finds that the "essence of the agreement" between Challenge Printing and EFI was for the sale of a product, and therefore the UCC applies.

### b. U.C.C. § 2-207: The Battle of the Forms

Under the common law "mirror-image rule," a purported acceptance that varies the terms of an offer operates as a rejection and counteroffer rather than an acceptance. *Niagara Bottling, LLC v. Rite-Hite Co., LLC*, 2019 WL 1768875, at *8 (C.D. Cal. Feb. 11, 2019) (citing *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir. 1986)). "Section [2-]207, however, rejects the 'mirror image' rule, and converts a common law counteroffer into an acceptance even though it states additional or different terms." *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924, 926 (9th Cir. 1979). "One intended application of section 2-207 is to commercial transactions in which the parties exchange printed purchase order and acknowledgment forms." *Diamond Fruit Growers*, 794 F.2d at 1442-43. In such cases, section 2-207(1) provides in relevant part that "a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon." Cal. Com. Code § 2207.

UCC § 2-207(1), however, carves out an exception where "acceptance is expressly made conditional on assent to the additional or different terms." Cal. Com. Code § 2207. "Th[at] proviso

1   has been construed narrowly." *Idaho Power*, 596 F.2d at 926. It applies "only to an acceptance
2   which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is
3   assured of the offeror's assent to the additional or different terms therein." *Id.* (quoting and
4   agreeing with *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972)). Courts
5   have often found that "[a] written statement that an acceptance is 'subject to all of the terms and
6   conditions on the face and reverse side [of the document], all of which are accepted by the offeror'
7   is not considered 'expressly made conditional on assent' within the meaning of Section 2-207(1)."
8   *Channell Commercial Corp. v. Wilmington Mach. Inc.*, 2016 WL 7638180, at *5 (C.D. Cal. June
9   17, 2016) (citing *Idaho Power*, 596 F.2d at 926 and *Diamond Fruit Growers*, 794 F.2d at 1444).

In this case, Challenge Printing's Purchase Order included no statement, express or otherwise, and merely contained Challenge Printing's Terms and Conditions. *See* Purchase Order. EFI's Investment Summary contained a statement, but it was exactly like those rejected in *Idaho Power* and *Channell Commercial*, stating that "[EFI will provide] the software licenses, hardware, and/or services (the "Products") listed in the Investment Summary pursuant to the attached Terms and Conditions." Investment Summary at 2. Thus, under section 2-207(1), the parties entered into a binding contract, even though they had separate terms and conditions.

The question then becomes whose terms and conditions apply. Under UCC 2-207(2), "[t]he additional terms [in the acceptance] are to be construed as proposals for addition to the contract. The Court is unable to apply UCC 2-207(2) to this case, however, because it is unclear which party made the offer and which party accepted the offer with a proposal for additional terms. "[B]oth of [the documents] are dated December 29, 2017," (Compl. ¶ 42; Investment Summary at 2; Purchase Order), and there are no other allegations from which the Court can determine which came first. If EFI's Investment Summary was sent first, then under UCC 2-207(2), EFI's terms and conditions would apply and Challenge Printing's terms and conditions would constitute an offer with a proposal for additional terms. If Challenge Printing's Purchase Order was sent first, then its terms and conditions would apply and EFI's terms and conditions

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
11

1 would constitute an offer with a proposal for additional terms.

2 EFI argues that regardless of which form came first, its integration clause is signed and therefore controls. Mot. at 10. There is some merit to this argument. UCC 2-207(3) provides: "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." At this stage, however, the record does not clearly capture "the terms on which the writings of the parties agree."[5]

Faced with this question of fact, the Court cannot conclude that Challenge Printing's claim for breach of its Terms and Conditions is subject to dismissal. "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are *unambiguous*." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Bedrosian v. Tenet Healthcare Corp.,* 208 F.3d 220 (9th Cir. 2000)) (emphasis added).

### 2. Alleged Breach of EFI's Terms and Conditions

As previously mentioned, Challenge Printing's breach of contract claim is also predicated at least in part on EFI's Terms and Conditions. Challenge Printing alleges that EFI breached its contractual duty to:

> (ii) provide software which performed materially in accordance with EFI's then-current applicable specifications; (iii) provide professional services in good and workmanlike manner consistent with generally accepted industry standards; [and] (iv) repair or

---

[5] Even if Challenge Printing agreed to EFI's terms and conditions, it is unclear whether it would displace all of the terms and conditions stated in Challenge Printing's Purchase Order. Integration clauses often expressly address contemporaneous negotiations. *See, e.g., Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807, (2012) (wherein the contract between the parties stated that "[t]his Agreement is the entire agreement between the parties in connection with Employee's employment with [Employer], and supersedes all *prior and contemporaneous* discussions and understandings.") (emphasis added). By contrast, EFI's integration clause refers only to prior and future negotiations, and omits any mention of contemporaneous ones. *Contra*. Mot. at 10. This leaves open the question of whether contemporaneous agreements were to be superseded.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

12

    replace the defective product, re-perform the service that did not
    meet EFI's warranties, or provide a full refund of the purchase price;

Compl. ¶ 76. These allegations are based on duties in paragraphs 7(a) and 7(c) of EFI's Terms and Conditions. Compl. ¶¶ 46-47; EFI's Terms and Conditions ¶¶ 7(a), (c).

  EFI argues that none of the alleged breaches (ii)-(iv) are legally cognizable. EFI first argues that its duty to (ii) "to provide software which performed materially in accordance with EFI's then-current applicable specifications" … was subject to the condition precedent that Challenge Printing properly installed all updates, upgrades and bug-fixes. Mot. at 13; EFI Terms and Conditions ¶ 7(a). EFI argues that there is no allegation that Challenge Printing has performed this condition precedent. Mot. at 13.

  "Under California law, in order to state a claim for breach of contract, … 'the performance of conditions precedent must be alleged either generally or specifically.'" *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2019 WL 3859035, at *5 (N.D. Cal. Aug. 16, 2019) (quoting *Gordon Bldg. Corp. v. Gibraltar Sav. & Loan Ass'n*, 247 Cal. App. 2d 1, 6 (1966)). Challenge Printing generally alleges that it performed all of its obligations pursuant to the December 29, 2017 Agreement." Compl. ¶ 77. Moreover, although Challenge Printing does not specifically allege that it has applied "all updates, upgrades, and bug-fixes," it does allege lengthy attempts to fix the persisting issues by contacting EFI's representatives. *See* Compl. ¶¶ 60-69. It is reasonable to infer that Challenge Printing at least attempted to satisfy the condition precedent by contacting EFI's representative. *See Retail Prop. Trust*, 768 F.3d at 945 (the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). Accordingly, Challenge Printing has pled sufficient facts to plausibly allege that the condition precedent was met.

  EFI also argues that breaches (ii) and (iii) are insufficiently pled because it is unclear to which software services Challenge Printing is referring, in particular whether having to do with the Radius Suite or only with iQuote. Mot. at 13-14. The argument is unpersuasive. When the complaint is read with its supporting material (the Investment Summary, Purchase Order, EFI's Terms and Conditions, and Challenge Printing's Terms and Conditions), it is clear that the breach

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

13

1   of contract claims are unambiguously directed to the iQuote system—the only system Challenge
2   Printing purchased.

3   Finally, with respect to breach of contractual duty (iv), EFI argues that the duty is
4   "contradicted by the limitation of liability language in [EFI's] Terms and Conditions." This
5   argument fails because EFI does not point to any specific contradictory language. Mot. at 14.
6   Although EFI cites generally to ¶9 of its Terms and Conditions, it is unclear what contradictions
7   EFI is referring to.

8   In sum, Challenge Printing's alleged breaches of contractual duties (ii)-(iv) are well-
9   grounded in EFI's own Terms and Conditions, and the Court finds no reason to dismiss the breach
10  of contract claim to the extent that it relies on those contractual duties.

### 3. Motion to Strike Incidental Damages from the Claim

For the breach of contract claim, Challenge Printing seeks damages in "an amount not less than $226,000," (Compl. ¶ 78), which is based upon "the $175,000 purchase price Challenge Printing paid EFI for the defective software and $51,000 for incidental damages Challenge Printing incurred as a result of EFI's material breach," (*id.* ¶ 73). EFI argues that this allegation is insufficient to satisfy Federal Rule of Civil Procedure 9(g), which requires that when an item of "special damages is claimed, it must be specifically stated." EFI reasons that incidental damages are a form of special damages, and therefore Challenge Printing must allege the damages "with particularity, as well as specify facts showing such damages were the natural and direct result of defendant's conduct." Mot. at 14 (citing *Browning v. Clinton*, 292 F.3d 235, 245-246 (D.C. Cir. 2002)). EFI relies solely on *Browning v. Clinton*, while Challenge Printing's opposition cites no legal authority on this issue. Mot. at 14; Opp. at 9.

In *Browning v. Clinton*, the D.C. Circuit held that "[a] disparagement of property claim requires that the plaintiff plead special damages." *Browning*, 292 F.3d at 245 (internal quotations omitted). Here, Challenge Printing is asserting a breach of contract claim, not a disparagement of property claim. As such, *Browning* provides little if any guidance in determining the applicability

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
14

of Rule 9(g) to Challenge Printing's breach of contract claim.

Instead, the Court turns to California law for guidance. Under California contract law, "damages are of two types—general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004). "Unlike general damages, special damages are those losses that do not arise directly and inevitably from any similar breach of any similar agreement." *Id.* District courts have similarly recognized "[s]pecial damages are those elements of damages that are the natural, but not the necessary, consequence of a defendant's conduct." *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1053 (S.D. Cal. 1998) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1310 (1990)).

As such, any analysis of special damages must turn on the underlying facts of the injury. For example, in *Klinkenborg Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp*, the District of Montana found that incidental damages met the specificity requirement where

> [t]he complaint allege[d] that Klinkenborg 'incurred substantial expenses in traveling in an effort to inspect and facilitate delivery of the 993YC and 992YC helicopters, the 992YC engine, and other outstanding parts.' (Doc. 1, ¶ 35). Klinkenborg's breach of contract claims specifically allege[d] damages in the form of expenses incurred "to travel and inspect the aircraft in an effort to have [them] delivered." (Doc. 1, ¶¶ 63, 68).

*Klinkenborg Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp*, 2014 WL 12725980, at *13 (D. Mont. Aug. 18, 2014) (assuming without analysis that incidental damages under UCC § 2-715, as would be applicable here, were a form of special damages).

In this case, however, Challenge Printing's complaint is vague. Challenge Printing only pleads that it incurred "$51,000 [in] incidental damages . . . as a result of EFI's material breach." Compl. ¶ 73. Challenge Printing's opposition, relying on the complaint and Demand Letter, merely restates that the "allegations are adequately pled." Opp. at 9. There are no facts stated in either the complaint or the Demand Letter to explain what caused the incidental damages. In the absence of any facts whatsoever, the Court cannot determine whether the alleged damages are the

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

15

1    "natural, but not the necessary, consequence of [the] defendant's conduct." *See Botosan*, F. Supp.

2    2d at 1053. Accordingly, although the Court will not strike Challenge Printing's claim for

3    incidental damages, the Court will preclude Challenge Printing from pursuing special damages at

4    trial unless the complaint is amended to comply with Rule 9(g).

### B. Fraud-Based Claims

Challenge Printing also alleges that, during the contracting period, EFI misrepresented to Challenge Printing that EFI's software

> (1) was fit for the purpose for which it was purchased; (2) would address areas of critical need that Plaintiff had previously identified to Defendant; (3) was focused on areas of importance and risk for Plaintiff; (4) would provide value to Plaintiff's business including a significant return on investment of at least $2,000,000; (5) would be able to be integrated into Plaintiff's current systems; (6) would enable Plaintiff to optimize the manufacturing floor and become much more efficient; (7) would eliminate multiple systems which caused Plaintiff's process to be inefficient and susceptible to significant risk; (8) would significantly improve Plaintiff's efficiency and profitability; (9) had the capability to automatically apply new pricing to estimates; (10) had a die library in which to choose the correct die for Plaintiff's press operators; (11) had the capability to view layouts accurately by the estimator; and (12) would work with CIMS to exchange data.

*Id.* ¶¶ 80, 87, 94, 98. [6] These alleged misrepresentations form the basis of Challenge Printing's claims of intentional misrepresentation, negligent misrepresentation, and fraudulent deceit. *Id.* at "Second Cause of Action," "Third Cause of Action," and "Fifth Cause of Action," respectively. As previously noted, these are all fraud-based claims that must meet the heightened pleading requirement of Rule 9(b). *See Vess*, 317 F.3d at 1103–04.

### 1. Insufficient Particularity

EFI contends that Challenge Printing has not met the heightened pleading requirement. More specifically, EFI contends that Challenge Printing has "not pled the actual content of the alleged misrepresentations made by EFI, either with respect to the software suite it actually purchased (the iQuote software) nor has it alleged facts sufficient to show that it justifiably relied

---

[6] For clarity, the Court will refer to the twelve alleged misrepresentations with their numbers when discussing them.

1    on those misrepresentations." Mot. at 15. In other words, EFI's contention is that Challenge

2    Printing has not sufficiently pled the "who, what, when, where, and how" of the

3    misrepresentations. *See Vess*, 317 F.3d at 1106. Paragraphs 80, 87, 94, and 98 alone, of course,

4    would not meet the standard of Rule 9(b) because they do not lay out, at a minimum, "who,"

5    "where," or "when." *See* Compl. ¶¶ 80, 87, 94, 98. However, as mentioned previously, these

6    alleged misrepresentations are substantiated by specific factual allegations about emails, phone

7    calls, and the like elsewhere in the complaint. The Court now turns to evaluating the alleged

8    misrepresentations, mindful that on a motion to dismiss, it views the allegations in the light most

9    favorable to the plaintiff. *Retail Prop. Trust*, 768 F.3d at 945.

10   Alleged misrepresentation (1) is pulled directly from the language of Challenge Printing's

11   Terms and Conditions and appears nowhere else in the communications between the parties. *See*

12   Challenge Printing's Terms and Conditions ¶ 3. Thus, although the "when" and "where" of

13   misrepresentation (1) is ascertainable, the "who" and "how" are not. "It is unclear who, if anyone,

14   from EFI can possibly be held liable for a representation in Challenge Printing's own Terms and

15   Conditions. *See* Purchase Order.

16   Alleged misrepresentations (2)-(12), are pled with the requisite "who, when, where, and

17   how." The "who" is Mr. Bradley, occasionally in conjunction with others such as their technical

18   employee, Sam, on the December 12 phone call, or in conjunction with Mr. Paul Lightfoot, Mr.

19   Dave Hall, Mr. Glyn Slack, and Mr. David Taylor when it concerns the Executive Brief. Compl.

20   ¶¶ 16, 18, 20-23, 38-40. The "when" are the dates of those same correspondences. *Id.* The "how"

21   is also clearly alleged. Challenge Printing specifically identifies which misrepresentations were

22   made by phone, by email, or in-person. *Id.* And, although there is no geographical "where," the

23   specific allegations regarding emails, phone calls, and the Executive Brief are satisfactory to

24   comply with Rule 9(b). *See, e.g., Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (finding

25   that the "allegations identified who (eight of Merisel's customers), what (four types of improper

26   revenue recognition), when (last two quarters of 1993 and first quarter of 1994), and where

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
17

(*reported in financial statements*).") (emphasis added). Ultimately, the purpose of Rule 9(b) is to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Challenge Printing's allegations are sufficiently particularized to establish the "who, when, where and how" of alleged misrepresentations (2)-(12).

The "what" of alleged misrepresentations (2)-(12), however, is lacking. Challenge Printing fails to explain whether the alleged misrepresentations relate to the Radius Platform or the iQuote system it actually purchased. "This is critical, given that Challenge Printing cannot conceivably rely on representations for a different product than what it purchased." Mot. at 17. The Executive Brief, for example, and all alleged misrepresentations contained therein appear to point exclusively to the Radius Suite. Other alleged misrepresentations made in emails by Mr. Bradley are made without reference to any particular product. *See, e.g.,* Compl. ¶ 17 (Mr. Bradley's October 13 email refers only to "EFI software," which may or may not encompass the iQuote software). Challenge Printing must provide more particularity so that EFI may "defend against the charge and not just deny that [it] has done any wrong," *Bly-Magee*, 236 F.3d at 1019. Accordingly, this Court finds that the Challenge Printing has not pled fraud with particularity under Rule 9(b) with respect to the second, third, and fifth causes of action.

### 2. EFI's Other Arguments

EFI also argues that, even if the claims were pled with sufficient specificity, "most of these statements are classic puffery." Mot. at 17. EFI further argues that the third cause of action, negligent misrepresentation, "is barred by the economic loss rule." Mot. at 18. Because the Court is dismissing Challenge Printing's second, third, and fifth causes of action on Rule 9(b) grounds, the Court declines to address these arguments at this time.

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE

18

### C. Unfair Competition Claim

Finally, the Court turns to Challenge Printing's fourth cause of action for unfair competition in violation of California Business and Professions Code § 17200 (the "UCL"). EFI argues both that Challenge Printing has not pled facts sufficient to support a UCL claim, and that Challenge Printing seeks an improper remedy under the UCL.

The UCL claim is based entirely upon the alleged misrepresentations of the second, third, and fifth causes of action. These claims have been dismissed for failure to comply with Rule 9(b). As such, the UCL claim is not legally cognizable as well. The Court similarly dismisses Challenge Printing's UCL claim.

### IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** EFI's motion to dismiss. The motion to dismiss the first cause of action is **DENIED**. The motion to dismiss the second, third, fourth and fifth causes of action is **GRANTED** and those claims are ordered **DISMISSED**. "A complaint should not be dismissed without leave to amend unless amendment would be futile." *Carolina Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014). The Court finds amendment would not be futile. Accordingly, Challenge Printing is **GRANTED LEAVE TO AMEND** the complaint. If Challenge Printing chooses to amend the complaint, Challenge Printing must file and serve the amended complaint no later than December 4, 2020. The case management conference scheduled for December 17, 2020 is continued to January 28, 2021 at 10:00 a.m. The parties' joint statement is due January 18, 2021.

**IT IS SO ORDERED.**

Dated: November 13, 2020

EDWARD J. DAVILA
United States District Judge

CASE NO. 5:20-cv-04659-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE
19