UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHALLENGE PRINTING COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONICS FOR IMAGING INC.,<br><br>Defendant. | Case No. 5:20-cv-04659-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

This case arises out of a software licensing agreement between licensee Plaintiff, The Challenge Printing Company, Inc. ("Challenge Printing"), and licensor Defendant, Electronics for Imaging, Inc. ("EFI"), for Challenge Printing's printing business. Challenge Printing also entered into a contract for Professional Services with EFI. In the Second Amended Complaint ("SAC"), Challenge Printing asserts claims for breach of contract; breach of the covenant of good faith and fair dealing; intentional misrepresentation; negligent misrepresentation; unfair competition in violation of California Business and Professions Code § 17200; and deceit (Cal. Civ. Code § 1709). Dkt. No. 47. Pending before the Court is EFI's motion for partial summary judgment on the claims for intentional misrepresentation and deceit, as well as the prayer for punitive damages. Dkt. No. 59. Challenge Printing filed an opposition (Dkt. No. 61) and EFI filed a reply (Dkt. No. 62). For the reasons discussed below, EFI's motion for partial summary judgment is granted.

## I.   BACKGROUND[1]

Challenge Printing is a pharmaceutical printing company that provides packaging

---

[1] EFI's motion relies heavily on allegations in the First Amended Complaint ("FAC"). Challenge Printing relies on uncontested allegations in the SAC. The Court will treat the allegations the parties rely on as undisputed facts for purposes of this motion.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

components such as labels, inserts, outserts, folding cartons, and pouches to pharmaceutical manufacturers. EFI is a company that develops technologies for the manufacturing of signage, packaging, textiles, ceramic tiles and personalized documents. Among other things, EFI sells computer printing software.

In 2016, Challenge Printing approached EFI regarding its desire to potentially purchase EFI's printing/packaging software.[2] EFI representatives Darren Bradley ("Bradley"), a Sales Development Manager, Dave Hall ("Hall"), a Packaging Service Specialist, and Glenn Slack ("Slack"), a Technical Specialist in Packaging, spent days on-site at Challenge Printing's facility, as well as additional time, learning about Challenge Printing's business needs. Decl. of Chad Sasso In Support of Challenge Printing's Opp'n to Def.'s Mot. for Partial Summ. J. ("Sasso Decl."), Dkt. No. 61-2, ¶ 2. EFI eventually provided Challenge Printing with an "Executive Brief" recommending its "Radius Platform" multi-suite software. Mot. at 8 (citing First Amended Complaint ("FAC"), Dkt. No. 23, ¶¶ 22-25; *id.*, Ex. 1). The Executive Brief was authored by Bradley, Hall, Slack, as well as Paul Lightfoot ("Lightfoot"), EFI's Eastern Region Manager, and David Taylor ("Taylor"), EFI's General Manager. SAC Ex. 1, Dkt. No. 47-1. Challenge Printing chose not to purchase the Radius Platform. Sasso Decl. ¶ 2. Nevertheless, discussions continued and centered on EFI's iQuote, which was one of the software products bundled in the Radius Platform.

Eventually, in mid-December 2017, Rick Mueller ("Mueller") of EFI emailed Challenge Printing, copying Lightfoot and EFI's Director for Product Development, Nick Benkovich ("Benkovich"), and expressed his understanding that Challenge Printing intends to "extract[ ] data to be read into [Challenge Printing's] MIS," and represented that this functionality "is made possible via [EFI's] API that comes core with the solution." Sasso Decl. ¶¶ 6-7. Mueller's emails

---

[2] At that time of the parties initial discussions, Challenge Printing was using a combination of Excel and other software programs. SAC ¶¶ 13-15.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
2

1  to Challenge Printing identified him as "Sales Development Manager-EFI Productivity Software."
2  *Id.* ¶ 4.
3        During a December 13, 2017 presentation at Challenge Printing's facility, Mueller,
4  Lightfoot, and another EFI representative Paul Napolitano ("Napolitano"), confirmed their
5  understanding that Challenge Printing's existing management information system, referred to as
6  CIMS, "would have full integration [of] iQuote so long as [Challenge Printing's] language was
7  similar to how ESKO works."  Sasso Decl. ¶ 7.  Challenge Printing had already integrated CIMS
8  with ESKO and informed EFI of this.  *Id.*  Later, Challenge Printing's Director of IT and Telecom,
9  Ashok Avadhani ("Avadhani"), requested and received from Benkovich EFI's "Handbook for
10 Integration Between Systems via XML" (hereinafter "2017 Handbook").  Decl. of Ashok
11 Avadhani in Support of Challenge Printing's Opp'n to Def.'s Mot. for Summ. J. ("Avadhani
12 Decl."), Dkt. No. 61-11, ¶ 3.  According to Sasso, Avadhani examined the 2017 Handbook and
13 confirmed it would allow for integration of iQuote into CIMS.  Sasso Decl. ¶ 9.
14       During December 2017, Mueller and Napolitano gave a virtual demonstration of iQuote to
15 Chad Sasso, Theodore Sasso, Adam Sasso, James Velez ("Velez"), and other Challenge Printing
16 personnel (hereinafter "December 2017 Presentation").  Mot. at 9 (citing SAC ¶ 49; Decl. of
17 Adrian Sawyer in Support of Mtn. for Summary Judgment ("Sawyer Decl."), Dkt. No. 59, Ex. A
18 at 33:2-14, Ex. C at 18:2-10); *see also* Sasso Decl. ¶ 8.  This 2.5 hour presentation, which was
19 recorded, shows "examples of how iQuote would handle estimating workflow for jobs Challenge
20 Printing had supplied to EFI for the purpose of this presentation."  Sasso Decl. ¶ 8.  "Dies/tooling,
21 layouts, and applying raw material pricing to estimates were all discussed in this presentation."
22 *Id.*
23       On December 22, 2017, Ted Sasso asked Mueller and Napolitano via email whether
24 iQuote would be able to separate set-up costs from running costs:

> As background, within the last few years, virtually all of our pharma customers require us to separate set-up costs from running, or cost per thousand pricing, in the quoting process. . . . [Y]our software will not due [sic] us much good if it cannot accommodate this wrinkle.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3

Sasso Decl. ¶ 17, Ex. G.  Lightfoot responded via email that "we do believe we have a solution" and that he was working with other personnel at EFI "to come back to you and provide that solution."  SAC ¶ 53.  On December 27, 2017, EFI held a conference during which Mueller, Benkovich, and Lightfoot assured Challenge Printing that iQuote could separate set-up costs from running costs.  Sasso Decl. ¶ 17.  A couple days later, Challenge Printing licensed iQuote and services for $175,000.  SAC ¶¶ 56, 58.

EFI was not ready to for Challenge Printing to begin the integration process until 2019.  Avadhani Decl. ¶ 4.  When EFI was ready to proceed, it gave Avadhani a different set of documents as a guide for the integration process ("2019 guide"); however, this document "did not allow integration of iQuote to CIMS."  *Id*.  Avadhani thought the 2019 guide was incomplete and did not appear to address iQuote.  *Id*.

The iQuote installation began in February of 2019.  SAC ¶ 70.  On March 2, 2019, Mike Richards ("Richards"), the EFI Project Manager, emailed a status report.  *Id*. ¶ 5.  Richards stated: "EFI has made it clear to Challenge [Printing] that they will be the first to adopt the new Vertical Application Suite for integration between EFI and another MIS."  *Id*.  Avadhani disputes ever previously being told Challenge Printing would be the first company to use this method.  *Id*.  When Avadhani sought assistance from EFI, none was forthcoming.  *Id*. ¶ 6.  Based on emails produced during discovery, Avadhani believes that EFI's representative, Chad Whetsell, stalled Challenge Printing's efforts to integrate iQuote into CIMS.  *Id*.  ¶¶ 5-9.  Ultimately, Challenge Printing could not proceed with the integration "because EFI did not provide [Challenge Printing] with the proper guidance and documentation."  *Id*. ¶ 10.  According to Challenge Printing, EFI simply walked away and abandoned the job.  Opp'n at 7.  This lawsuit ensued.

Pertinent to the pending motion, Challenge Printing alleges that during the parties' pre-contractual stage, EFI made nine misrepresentations about its iQuote software.  Specifically, EFI allegedly misrepresented that iQuote:

(1) would "estimate 100% of Plaintiff's requests for quotes;

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

4

    (2) would provide a way to get that data into Plaintiff's CIMS system for Plaintiff's current order entry and job system;

    (3) would extract data to be read into Plaintiff's MIS, made possible through API which comes core with iQuote;

    (4) would address areas of critical need that Plaintiff had previously identified to Defendant;

    (5) was focused on areas of importance and risk for Plaintiff;

    (6) had the capability to automatically apply new pricing to estimates;

    (7) had a die library in which to choose the correct die for Plaintiff's press operators;

    (8) had the capability to view layouts accurately by the estimator; and

    (9) had the ability to separate out costs from running costs.

SAC ¶¶ 45, 122. Challenge Printing contends that all of these statements were false because iQuote could not be integrated with CIMS. Opp'n at 8-9.

## II. STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such a showing, the court may grant summary judgment on all or part of a claim or defense. *See id*.

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party needs to show only that there is an absence of evidence to support the non-moving party's case. *Id*.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *Id*. at 324. Nor may the non-moving party merely attack

or discredit the moving party's evidence.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial.  *Celotex Corp.*, 477 U.S. at 324.  "In judging evidence at the summary judgment stage, the district court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party."  *Howard v. Regents of Univ. of Cal.*, No. 99-1339 SI, 2000 WL 424192, at *4 (N.D. Cal. Apr. 12, 2000) (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630-31 (9th Cir. 1987)).

## III.  DISCUSSION

EFI moves for summary judgment on the intentional misrepresentation and deceit claims, contending that Plaintiff has no evidence of: (1) an actionable misrepresentation; (2) knowledge of falsity; (3) intent to deceive; and/or (4) reliance.  EFI also contends that Challenge Printing lacks any evidence to support an award of punitive damages.  In the alternative, EFI seeks entry of partial summary judgment that one or more of the nine alleged misstatements are not actionable.

### A.  Intentional Misrepresentation and Deceit Claims

"The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity (or "scienter"), (3) intent to defraud (i.e., to induce reliance), (4) justifiable reliance, and (5) resulting damage."  *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996).  Under California Civil Code § 1709, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."  Cal. Civ. Code § 1709.

#### 1.  Puffery- Alleged Misstatements 4 and 5

EFI contends that two of the alleged misstatements are classic puffery, and therefore are not actionable.  The two alleged misstatements are:  that iQuote "would address areas of critical need that Plaintiff had previously identified to Defendant" and that iQuote "was focused on areas of importance and risk for Plaintiff."  SAC ¶ 122.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

6

"Puffery is generally characterized as a statement of opinion, as opposed to a statement of fact, on which no reasonable consumer would rely." *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liab. Litig.*, 295 F. Supp. 3d 927, 1005 (N.D. Cal. Mar. 15, 2018) (citing *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014)). The difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. *Demetriades*, 228 Cal. App. 4th at 311 (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)). "[A] statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Id*. (quoting *Newcal*, 513 F.3d at 1053 (internal quotation omitted)).

Here, the alleged misrepresentation that iQuote "would address areas of critical need that Plaintiff had previously identified" is not specific or quantifiable enough to induce reliance. Challenge Printing argues that EFI spent several days learning about Challenge Printing's business and therefore knew the "areas of critical need." The alleged misrepresentation, however, is still nonspecific: it does not identify any particular area of critical need. Moreover, even if EFI knew what the "areas of critical need" were as Challenge Printing contends, the alleged commitment to "address" areas of critical need is not quantifiable. The alleged misrepresentation that iQuote "was focused on areas of importance and risk for Plaintiff" is likewise not specific or quantifiable enough to induce reliance. Moreover, EFI made these two representations in reference to the entire Radius Platform, not just iQuote. Challenge Printing did not purchase the entire Radius Platform. Therefore, even if the representations were not puffery, Challenge Printing cannot show the requisite justifiable reliance and resulting damages to establish fraud based on these two misstatements.

EFI's motion is granted as to alleged misstatements 4 and 5.

### 2. Alleged Misstatements 6, 7, and 8

The sixth alleged misrepresentation was that iQuote "had the capability to automatically

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

7

apply new pricing to estimates." SAC ¶ 125. The seventh alleged misrepresentation was that EFI's software had a "die library in which to choose the correct die for Plaintiff's press operators." *Id*. ¶ 136. The eighth misrepresentation was that iQuote "had the capability to view layouts accurately by the estimator." *Id*. ¶ 122.

EFI argues that these alleged misstatements fail because there is no evidence that they were ever made. In response, Challenge Printing points to the December 2017 Presentation. Conspicuously absent, however, is any representation that alleged misstatements 6, 7, and 8 were actually made during the December 2017 Presentation, much less by whom. Instead, even though the December 2017 Presentation was recorded, Challenge Printing asserts only vaguely that the December 2017 Presentation showed examples of how iQuote would handle estimating workflow for Challenge Printing and "discussed" dies/tooling, layouts, and applying raw material pricing to estimates. Sasso Decl. ¶ 8. This is, at most, a mere scintilla of evidence that is insufficient to avoid summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

EFI's motion is granted as to alleged misstatements 6 through 8.

### 3. Alleged Misrepresentations 1-3

Mueller allegedly made misrepresentations 1 through 3 via emails dated October 10, 2017 and December 13, 2017. In the October 10, 2017 email, Mueller stated:

> As I promised, here is the pricing quote for our Intelligent Estimating system for our Packaging Suite. I have had several discussions internally since we met and we all feel confident that you[r] approach is a good one – let's tackle this project first, prove it's [sic] value and then position ourselves for future projects that would include the rest of the packaging suite. For this project – *we will be able to Estimate 100% of your requests for quotes, and then provide a way to get that data into your CIMS system for your current order entry and job system*.

Sawyer Decl. Ex. G at 1 (emphasis added). Mr. Mueller was asked about his basis for this statement at his deposition, and testified that his technical expert, Napolitano, told him that iQuote

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

8

1  had been able to handle every use case Plaintiff had sent EFI. *Id.*, Ex. F at 69:1-8. There is no

2  evidence to refute this deposition testimony. In the December 13, 2017, Mueller stated:

3  
4  
5  
> One of the follow up items was to be a technical discussion with you on how our API works with the product. We know that you have the intention of extracting data to be read into your MIS, and that is made possible via our API that come core with the solution.

6  *Id.*, Exs. F & I.

7  EFI contends that there is no evidence Mueller made misrepresentations 1 through 3 with

8  scienter. In response, Challenge Printing argues that the misrepresentations were made with

9  imputed knowledge of their falsity. Opp'n at 14. The argument is unpersuasive. As an initial

10 matter, Challenge Printing's reliance on cases discussing imputing an employee's knowledge to

11 the employer[3] misses the mark. The issue is not whether Mueller's state of mind can be imputed

12 to EFI, but rather whether Mueller even knew his statements were false to begin with. As to the

13 latter issue, Challenge Printing argues that information known to other EFI employees may be

14 imputed to Mueller to prove scienter. First, the developer of iQuote, EFI employee Marcello

15 Gobbi ("Gobbi"), testified that the capability for "full integration between iQuote library and the

16 Challenge Printing library software" did not exist until "maybe in April 2020," which was nearly a

17 year after EFI tried to start the integration and implementation and well after EFI had abandoned

18 Challenge Printing. Sawyer Decl., Ex. H at 81-82; *see also id.*, Ex E.

19 The fundamental flaw with Challenge Printing's argument is that there is no basis to

20 impute Gobbi's knowledge to Mueller. *See*, *e.g.*, *BMA LLC v. HDR Global Trading Ltd.*, No. 20-

21 cv-03345-WHO, 2021 WL 4061698, *12 (N.D. Cal. Sep. 7, 2021) (citing *Jackson v. Abernathy*,

22 960 F.3d 94, 98 (2d Cir. 2020)) (rejecting imputation of scienter to corporation where employees

---

[3] *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1400 (C.D. Cal. 1990) (" 'It is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself.' ") (quoting *W.R. Grace & Co. v. Western U.S. Industries*, 608 F.2d 1214, 1219 (9th Cir. 1979), cert. denied, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980) (citation omitted)).

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

9

with alleged knowledge had no "connective tissue" to alleged misrepresentations). Although not binding, *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, is instructive in explaining that "it is not enough to *separately* allege misstatements by some individuals and knowledge belonging to some others where there is no strong inference that, in fact, there was a connection between the two." 248 F. Supp. 3d 428, 440 (S.D. N.Y. 2017) (emphasis in original).

Here, there is no evidence of a connection between Gobbi and Mueller other than that they are both EFI employees. The only possible connection between Gobbi's alleged knowledge and Mueller's alleged misrepresentations is Benkovich, who was Gobbi's supervisor and copied on Mueller's December 13, 2017 email to Challenge Printing.[4] This is too tenuous of a connection to support an inference that Mueller knew, based on Gobbi's assessment of the functionality of iQuote, that his representations to Challenge Printing were false when made.

Relatedly, Challenge Printing argues that Benkovich was involved in every stage of the parties' transaction and knew the alleged misstatements were false. Opp'n at 1. EFI objects to this never-before-made argument as procedurally improper. The Court agrees. Benkovich is not mentioned in any of Challenge Printing's complaints. During discovery, EFI propounded interrogatories asking Challenge Printing to state all facts supporting its contention that the nine alleged misrepresentations were made with knowledge of falsity. Sawyer Decl., Ex. E., Interrogatory Nos. 7-16 ("State all facts that support your contention that, prior to contracting, EFI knew that . . . ."). Benkovich is not mentioned in any of the interrogatory responses. *Id*. Therefore, Court declines to consider Challenge Printing's belated argument. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Second, Challenge Printing relies on EFI employee Stephanie Groth's ("Groth") knowledge of iQuote to show scienter. Specifically, Challenge Printing contends that in April 2019, Groth admitted iQuote was not going to work for Challenge Printing without the rest of the

---

[4] There is no evidence that Mueller copied Benkovich on the October 10, 2017 email.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

10

Radius Platform. Decl. of James Velez in Support of Challenge Printing's Opp'n to Def.'s Mot. for Summ. J., Dkt. No. 61-23, ¶ 3. As with Gobbi, there is no evidence connecting Groth's statement in 2019 to Mueller's state of mind in 2017 when he made the alleged misrepresentations.

EFI's motion is granted as to alleged misstatements 1 through 3 because Challenge Printing has not presented specific admissible evidence sufficient to create a genuine issue of material fact as to whether Mueller knew those alleged misstatements were false when made.[5]

#### 4. Alleged Misstatement 9: iQuote "Had The Ability To Separate Out Costs . . ."

Lastly, Mueller and Lightfoot allegedly represented that iQuote "had the ability to separate out costs from running costs." SAC ¶ 122; *see also id.* ¶ 80.[6] EFI contends that Challenge Printing has "removed" this statement from the case, citing Challenge Printing's April 13, 2021, Rule 30(b)(6) deposition testimony of Velez. Sawyer Decl., Ex. C at 149:16-150:3. Although Challenge Printing does not explicitly respond to EFI's argument, it is evident that misrepresentation 9 remains in the case. *See* Opp'n at 10-11 (arguing that the statement is false and that there is evidence of knowledge and intent to deceive).

Turning to the merits, for reasons already discussed, there is no evidence that Mueller knew that this alleged misrepresentations was false when made. Nor has Challenge Printing cited to evidence to show that Lightfoot knew alleged misrepresentation 9 was false, and the Court need not "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Accordingly, EFI's motion is granted as to alleged misstatement 9.

---

[5] Because there is no evidence that Mueller made the alleged misrepresentations 1 through 3 with knowledge that they were false, it is unnecessary to consider whether there is evidence to establish the remaining elements of fraud and deceit as to these three alleged misrepresentations.

[6] Sasso's Declaration indicates that Benkovich was present when Mueller and Lightfoot made alleged misrepresentation 9. Sasso Decl. ¶ 17. Since Benkovich was not mentioned in the SAC, the Court declines to consider this evidence. *Wasco Prods.*, 435 F.3d at 992.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
11

**B.     Punitive Damages**

Punitive damages may be awarded only where there is malice, oppression, or fraud, defined to mean intent to injure or willful and conscious disregard of others' rights. *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 569 (1999). Because the fraud claims are not legally viable for the reasons discussed above, those claims do not supply a predicate for punitive damages.[7] Even if those claims could survive summary judgment, the Court concludes that no reasonable jury could find by clear and convincing evidence that EFI acted with malice or oppression based on this record in this case. Therefore, the prayer for punitive damages is stricken. *See Saarman Const., Ltd v. Ironshore Specialty Ins. Co.*, 201 F. Supp. 3d 1136, 1157 (N.D. Cal. 2016) (granting summary judgment on the issue of punitive damages where plaintiff's evidence did not meet the clear and convincing standard of proof).

//
//
//

---

[7] EFI did not move for summary judgment on Challenge Printing's remaining claims for breach of contract, negligent misrepresentation, violation of section 17200, and breach of the covenant of good faith and fair dealing. Punitive damages are not available for any of these claims as a matter of law. *Myers Bldg. Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal. App. 4th 949, 960 (1993) ("An award of punitive damages is not supported by a verdict based on breach of contract, even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious."); *American Color Graphics, Inc. v. Travelers Property Casualty Company of America*, No. 04-3518 SBA, 2007 WL 9728853, at *22 (N.D. Cal. Jan. 22, 2007) (punitive damages are not available for purely negligent misrepresentations); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007) ("[I]t is settled law that punitive damages are not available under section 17200."); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 313 F. Supp. 3d 1113, 1149 (N.D. Cal. 2018) ("[E]xcept in the insurance context, 'an award of punitive damages is not recoverable for breach of the implied covenant of good faith and fair dealing.'") (quoting *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1043 (C.D. Cal. 2008)).

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

12

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for partial summary judgment is GRANTED and the prayer for punitive damages is STRICKEN.[8]

**IT IS SO ORDERED.**

Dated: September 26, 2022

EDWARD J. DAVILA
United States District Judge

---

[8] The Court's ruling is not intended to address whether and to what extent any of the alleged misstatements may be admitted at trial to prove the remaining claims at issue.

Case No.: 5:20-cv-04659-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

13